324-0409, President Fritz and David Stokes, athletes by Joseph Morris, v. Lawrence v. Ferry, personal and in their official capacity, appellant by Burton Orelson. It is certainly an honor to appear in this courtroom in this city and be able to speak with you today. Thank you. Although the briefs in this court debate as to whether costs or sanctions in reference to the facts of this case include attorney's fees, and whether we are entitled to $24,000 in attorney's fees expended in litigation costs, time and effort in attempting to get an attorney, an officer of the court, to comply with Supreme Court rules and court orders, there is a far more important matter of the law to address here today. The $24,000, although important to the business aspect of running a law firm, isn't the main issue, and that's why I'm here. The far more important ruling I'm looking for, especially in this day of disregard for the judiciary, the legal process, and the rule of law, is a ruling that sends a clear message to the bar. If frivolous lawsuits will not be tolerated and disobedience of court orders will have consequences. In the concluding paragraph of Judge Anderson's opinion in the underlying case in which he granted my motion to dismiss the underlying case, he said, and it's kind of ironic because we're standing across the way from where Abraham Lincoln debated. Judge Anderson said, Abraham Lincoln once said, elections belong to the people. Setting aside the electorate's voice in the county clerk's race based on how many votes someone else got in another race, and based on a mathematical probability analysis would disenfranchise all voters who voted, who did nothing wrong in exercising their right to vote. Judge Anderson's statements in his rulings and in the underlying case are the backdrop for the citation portion of the case, which is before you now. Judge Anderson began his opinion by stating that the plaintiff based her complaint on remarkable claims, that the vote totals were artificially contrived according to a predetermined plan or algorithm. Ms. Fritz, who brought the case below, seeks an extraordinary remedy to match her extraordinary claims, including that the votes that were cast be discarded, we have a new election with paper ballots, and then counsel conceding an oral argument that paper ballots were used in the race to begin with. Equally extraordinary is the remedy that Ms. Fritz does not seek, a recount and her examination of the paper ballots that were actually cast in Congress. We're not talking about that part of the case though, are we? No, we're not. But the lead up, because that part of the case was so extraordinary and so extreme, and sanctions were granted, which of course are an extreme remedy anyway, Rule 137, I wanted just to take a minute to talk about some of the aspects of that case, which carried up into the citation case and the collection of our attorney's fees as a sanction. And that's quite understandable, but isn't the issue here whether or not attorney's fees are costs? That's one of the issues, whether attorney's fees are a proper sanction or a proper cost. Because, Your Honor, under Supreme Court Rule 277, which is entitled Supplemental Proceedings, under that rule, under H, sanctions, the second part of it says, the court may also enforce its order against the real and personal property of that person, in this case the judgment debtor. That was exactly what the court in Shales, which we cited, used, which was a federal court case, but which analyzed Supreme Court Rule 277, which is the governing rule over 735 ILCS 5-2-1402, which is the Citation to Discover Assets section of the statute. There is an I section to Rule 277, and it defines costs, and it says, court may tax this cost a sum for witness fees, stenographers, and officer's fees, etc. It does not say attorney's fees, an I, but it doesn't have to, because H, under sanctions, takes care of that, as the Shales court told us. In Triumph v. Kennedy Bank, which we also cited, the court, the appellate court, held that the trial court had discretion as to the nature of the sanction to impose, and a finding of contempt was not a prerequisite to imposing a sanction. Sometimes the court will hold an attorney in contempt for not complying with court orders. Sometimes they will not use the contempt tool. They'll order a different sanction, that sanction being a monetary sanction, and in an extreme case, a contempt and let off to jail. So there are different means of enforcing the sanctions portion of the Supplementary Proceedings Supreme Court Rule. Mr. Odelson. Yes, ma'am. Go ahead. Mr. Odelson, in Shales, the ward was following a contempt, and it specifically said it was for fees and costs. It didn't say the fees were costs, though, did it? It did not. Thank you. It did not. Wasn't there also a local federal court rule that was part of their decision? 37, yes. Rule 37 was interpreted along with the 5-2-14-02, the citation to discovery assets. The Shales court interpreted both. And in doing the research, it was a little surprising to me that there are very few cases that talk about attorney's fees as a cost or attorney's fees as a sanction, very few. That's why we relied on the one most recent, and that is Shales. Even though it was a federal court decision, it did talk about and analyze our statute and our Supreme Court rule. Attorney's fees don't come from the common law. They come by statute, correct? Attorney's fees? Yes. Yes, ma'am, that's correct. So they come specifically from statutory authority. Yes, ma'am. So what statutory authority granted in Illinois deals with the award of attorney's fees? The Supreme Court rule 276. Statutory authority. In 5-2-14-02, the citation to discovery assets, paragraph H, costs and proceedings authorized by this section shall be allowed, assessed, and paid in accordance with the rules. And specifically, there are sections that deal with attorney's fees, such as under Section 508, 750-ISCS-508C for attorney's fees in divorce cases and things like that, specifically awarding attorney's fees, correct? Correct, like in 1983, actually, where you have it right in the statute. That's correct. It is not in our face in the statute here. You have to work towards it, but it's there, and that's what Shales says. It is there. There must be some type of sanction for the conduct that we experience in the case below, which, again, continued into the citation. If I can just revert one second back to Judge Anderson's counsel, Shatakis, who was the attorney who filed the case in this instance, filed a motion to reconsider and a motion to strike Judge Anderson's initial order and the motion to dismiss. And Judge Anderson said, and again, I'm sorry for throwing around Judge Anderson's name. I know he's now on the appellate court. But it is a very detailed and three really excellent orders. He said, likewise, the petition contains no allegations as to how the algorithm actually impacted the election. I have a question. What does this have any relevance to the issue that we have to decide today? I'm confused. You keep going back to the case that's already been decided actually by this court. It wasn't decided. You're right. I'm at a loss for the relevance. Only because of the absurdity of the initial case and the conduct of the lawyer who brought the case, whose conduct continued. Which got the $35,000 sanction. For that case. Yeah, got it. We all understand that. Got it. And then when we said, okay, signed today, he was still in the process of appealing the initial case, which on this court's motion you disposed of because of a variety of problems he incurred in trying to file his appeal. We then proceeded to file a citation to discover assets because he didn't comply with Rule 305 and filed an appeal bond. If he had filed an appeal bond, I wouldn't be standing here now. If he had complied with the citation to discover assets, we wouldn't be standing here now. But instead, we had to go through hours, hours of trying to get Mr. Shatakis to answer the citation to discover assets so we can recoup the $35,000 awarded as a sanction in the initial case. And you have recouped that, correct? Pardon? You have received the money? The $35,000. Yes, we have. I have a question. It's $24,000. Yes. This is an A or B type answer. Is that for all of the work done to start the whole collection process? Or is all that $24,000 only what you initiated after it became clear in your perception that Mr. Shatakis had not filled out and submitted the answer to the statement for the citation? Is that $24,000 everything? Because you're asking, you're saying he could be punished for contempt. The contempt doesn't happen until after he has ignored the citation and it becomes clear. So what is that $24,000? B. B, okay. That's just in what happened after his, what you perceive as his first time not filling out the statement? Yes. Yes. We were waiting for the bond to be filed because that's the normal thing you would do in a judgment if you're going to appeal. It wasn't filed. We then had discussions. People in my office had discussions with him. Nothing happened, and we were forced to file the citation. Then when the first appearance in court, the plaintiff executed the citation. The discovery assets. Mr. Shatakis refused, hired Mr. Morris, who you'll hear from in a minute, and then the pleading started. I should also note that the $24,000 is based on what I call our municipal fee at $250 an hour, not a corporate or downtown fee. We charge that $250 to our municipal clients, so we just carried it out in this case. Not fair to my defendant, Lauren Staley Ferry, who at that time was the Will County clerk. She was the one that was sued, and the state's attorney refused to represent her, and I had to step in to represent her. So the $24,000 is, Justice, just that portion where he fought the citation. Not all the appeal work, all the work of filing these appeals. That is not part of the $24,000. Just the citation portion and the motion practice. Although I mentioned contempt, there was no finding of contempt. The lower court didn't have any findings, no factual findings. Just denied our motion for fees and costs, straight out denial. So we believe that this court can step in those shoes and make a finding that, pursuant to Supreme Court Rule 277 and Shales and the law, to preserve the integrity of the election process and the democratic process in having lawyers obey court orders. And it really boils down to that. So we're asking that you reverse Judge Harvey's decision, send it back, and ask that he, will you direct him to order the $24,000? I want to ask you one question about that. Sure. It seems to me the question you're posing is one of law. Are attorneys fees cost, pursuant to the statute of the Supreme Court? That's a question of law. If we were to agree with you, if we sent it back and it would not be in order for him to pay, then he's got discretion. He would have discretion. He would have to then take the next step. You're saying he didn't make any findings, and if that's true, that just, you have an argument that he never actually exercised discretion. He thought it was a rule of law. So if we agree with you, we don't just tell him what to do at this point. You go back and have another hearing where he can choose to get the information he needs and then exercise his discretion and then decide whether or not you get any part of or all of the $24,000. Would you agree with that? Partially, yes. But you've got to take it to the other step where the sanction portion in paragraph H of Supreme Court Rule 277 allows the sanction to be a monetary sanction without talking about cost, whether it's cost or not. Yeah, but it uses the word may. May. So he's got to exercise discretion.  We would not be doing, we can't at this stage of taking what you just acknowledged, may. That means he still has to get to that step two. That's correct. You're saying he never got to it. I don't know what. I'm not saying he did or he didn't. I'm just saying the rule of law, your argument is attorneys fees are cost for this purpose. He disagreed with that. If we were to agree with you, there's still a whole step to it. We have to go back for a discretionary hearing. And the cost on the attorneys fees. Yeah. I would agree with that. Okay. But just, it's not just cost. It's also a sanction under H, number 277. Thank you, Your Honors. Thank you. Any further questions? No questions. Thank you. Thank you. Mr. Morris. Thank you. Good afternoon. Good afternoon. May it please the Court, I'm Joseph Morris. I represent one of the, in this matter, Mr. Shostokos, who was one of the judgment debtors below. My learned friend is asking this Court to decide whether, in fact, to come to two novel decisions. And I respectfully submit that they're both dangerous for our rule of law. The first is to hold that the term costs, as it's used in the relevant rule here, embraces attorneys fees. That's something that the rule itself does not provide, and there's no case law that says it does. The second novel and dangerous thing he's asking this Court to do is to hold that a trial judge who was not asked to find a litigant in contempt should have done so sua sponte, and it was error that he did so even without having been asked to find the litigant in contempt. Let me back up. We make a lot of noise in the briefs about the American rule, and I think when the dust settles, we both agree. The American rule prevails. That is to say, attorneys fees are borne by the party who incurs them unless there is a statute or a rule or a contract or some similar provision that consciously and purposely shifts that responsibility. Here, the submission is it is the rule. That is, it is the language that imposes costs, and the question is do those costs embrace attorneys fees. I respectfully submit that there is no basis for this Court to enlarge the meaning of the term costs as it's used by the Supreme Court in the rule and certainly no basis for using it in enlarging the meaning of the term costs as it's used in the predicatory statute to embrace attorneys fees. There's no law that supports that, and that would be a major departure from every precedent. On the question of whether or not Mr. Shostokos should have been found in contempt, not sanctioned because of the folly of the case on the merits that briefly touched upon, when your brother, Anderson, now rather then Judge Anderson, punished him and his client harshly, a $35,000 judgment which my client, Mr. Shostokos, paid in full. The sanction was entered jointly and severally, and the appellant here sought to enforce it only against Mr. Shostokos, and Mr. Shostokos paid it. What Mr. Shostokos did along the way, having failed to file a supersedeus bond on a timely basis, and there is a time limit unless leave is granted, did two things. First of all, he attacked the citation procedure, and he sought leave out of time, which can be discretionary to post the supersedeus bond. I respectfully submit that nothing in the record, or rather everything in the record, shows that what Mr. Shostokos did through counsel to contest the citation and to seek leave to post the supersedeus bond out of time was done with the permission of the lower court. An application was made for leave to file such and such a thing. An application was made for additional time in which to perfect it. An application was made to do it, and so forth. In each instance, the court enlarged the time, assented to the filing, and decided the matter. Eventually, the record shows the parties agreed that it makes a lot of sense to post the supersedeus bond because then the hunt's over. The funds are there. In the briefs, there's a red herring about whether or not the funds were posted on a timely basis. That's entirely to order the record. We know from the record the funds were there one day, one day the funds were not there, the next day the funds were there again, and indeed they were paid over. Why there was that gap, that lacuna, we don't know. No record was ever developed on that. But the funds were there, and they were paid by the clerk. Having been deposited by Mr. Shostokos, they were paid over to the appellant here. At no point did Mr. Shostokos commit any act that overtly violated or covertly violated an order of the court. Each measure he took to contest the remedies, the relief that was sought by the appellant, was done in the open with the consent of the court right up until the point when the supersedeus bond was filed. The supersedeus bond was a negotiated amount. There's no order of the court determining, calculating what it should have been. The parties agreed. Finally, it was a common-sense decision. The amount of the judgment plus some round number, it was $10,000 over that judgment, in the event that the trial court would find that there were additional costs or something else to be assessed. The record shows that the trial court did do what it should do under the rule. It calculated the costs, as they are known and are calculable under the applicable rule, and awarded those costs. There was then an application for attorney's fees. That application for attorney's fees was not predicated upon any urging of the trial court that there was misconduct by the appellee below, that he was contemptuous of the court. There was no allegation that during the time between the entry of the judgment and the posting of the supersedeus bond that the appellee did any of the kinds of things that justified the imposition of those sanctions in Shales or in Triumph, the big federal case and the state case that are asserted in Learned Counsel's brief. There was no wasting of the assets. There was no hiding of the assets. I think in Triumph there were some 70 transactions using the assets that should have been subject to the citation. 70 transactions using those assets without the consent or the knowledge of the court and the parties. None of that happened here. The money was there. The money was posted. The money was paid over. I respectfully submit that there is no basis in the law either to explode the current definition of costs, as they're found in the relevant rule and the statute, and there's no basis for this court to determine that the trial court erred in failing subsequent to the entry of the judgment that Mr. Shostokos was in contempt. For those reasons, the judgment of the trial court, eminently reasonable, should be affirmed. Justice Kennedy? No further questions. Thank you. Justice, do you have a question? Not for me either. Thank you. Thank you. Mr. Ortleson? Thank you. Just very, very briefly. I won't dwell on costs. We recite the Black's Log Dictionary definition of costs. That's what Black says costs are, which includes attorney's fees. But I will dwell on the last question that the Justice asked me in regards to sanctions and Rule 277H, because Shales directly talks about the sanction of attorney's fees and just, if I could just recite, violation of the citation requirements allows the court to award attorney's fees, in part to induce an offending party to comply with future court orders, citing both Rule 37 and 735 ILCS 5-2. There's no need for a contempt fine. There's no need for contempt fining. No. So isn't there a need for some fining that something wasn't done that was supposed to be done? Yes. Was that fining made? No. And that could have been an abuse of discretion. But because the orders, they're naked, just denying, that's all we had to deal with with the de novo standard. So when the November 27th, 2023, the court ordered Mr. Chautakis to answer the citations, didn't, started down the pleading stage about why he didn't have to, leading up to the June 4th bond being posted, case over at that point. So we're asking, whether you do it yourself or you send it back to the judge, that we be allowed our day to prove up our costs just for the portion of the citation proceedings that disobeyed the order of the court. Thanks. Any questions? I don't have any questions. Thank you. Thank you. Thank you, counsel. Have a good afternoon. Thank you, gentlemen. I appreciate you joining us today. This case will be taken under advisement and a decision will be issued in due course.